UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Taylor Webb, et al., | No. 1:19-cv-01716-KJM-CSK |
| Plaintiffs, | ORDER |
| v. | |
| County of Stanislaus, et al., | |
| Defendants. | |

    Plaintiffs request this court approve the settlement and compromise of minor plaintiff A.W.'s claims. The court submitted the motion without oral argument as provided under Local Rule 230(g). For the reasons set forth below, the court **grants** the petition and approves the minor's compromise.

**I.    BACKGROUND**

    In October 2019, plaintiff Taylor Webb gave birth to her daughter, plaintiff A.W. Compl. ¶¶ 90–91, ECF No. 1. A.W.'s father, plaintiff Jeremy Westfall was present at the birth. *Id.* ¶ 92. On October 31, 2019, a few days after A.W. was born, plaintiffs allege Stanislaus County social workers unlawfully removed A.W. from Webb. *Id.* ¶¶ 129–48. Plaintiffs state defendants were concerned about Westfall's proximity to A.W. given that a daughter from a previous relationship had recently died in his care. *Id.* ¶ 117; Mot. at 6, ECF No. 144. The next day, Webb was reunited with her daughter only after she agreed to file paperwork for full legal custody of A.W

1

1  and adhere to a "safety plan" whereby she would go to her mother's home in Utah.  Compl. ¶¶
2  209, 223–26, 259, 284.

3  Webb then began to experience severe shortness of breath and voluntarily returned to the
4  hospital where she was readmitted and placed into a medically induced coma.  *Id.* ¶¶ 290–96.
5  While Webb was hospitalized, plaintiffs allege defendants conspired with Webb's mother to
6  initiate unlawful guardianship proceedings in state court to allow Webb's mother to secure
7  custody of A.W.  *Id.* ¶¶ 294–303; Mot. at 6.

8  After Webb was discharged, she drove with her mother and A.W. to Utah.  Compl.
9  ¶¶ 414–16.  However, Webb later left her mother's home with A.W. and returned to California.
10  *Id.* ¶¶ 476–77.  Plaintiffs subsequently initiated this action alleging Stanislaus County social
11  workers violated their constitutional rights by removing A.W. from Webb's care and custody.
12  *See generally id.*  In October 2023, plaintiffs agreed to settle their case against Stanislaus County.
13  Mot. at 7.  Under the settlement agreement, Stanislaus County agreed to pay a total of
14  $600,000.00, inclusive of attorneys' fees and costs to plaintiffs.  *Id.*  In return, plaintiffs agreed to
15  dismiss all claims against each defendant.  *Id.*  Petitioner Donnie R. Cox, as A.W.'s Guardian ad
16  Litem, now applies for compromise of the minor plaintiff's settlement proceeds.  *See id.* at 3.
17  Subsequently, plaintiffs filed a notice of errata to correct the spelling of minor plaintiff A.W.'s
18  name in plaintiffs' proposed order approving the minor's compromise.  Notice, ECF No. 150.

19  **II.    LEGAL STANDARD**

20  District courts have a duty to protect the interests of minor litigants.  *See* Fed. R. Civ. P.
21  17(c)(2) (requiring court "appoint a guardian ad litem—or issue another appropriate order—to
22  protect a minor or incompetent person who is unrepresented in an action").  This special duty
23  requires a district court to "conduct its own inquiry to determine whether the settlement serves the
24  best interests of the minor."  *Robidoux v. Rosengren*, 638 F.3d 1177, 1181 (9th Cir. 2011)
25  (quoting *Dacanay v. Mendoza*, 573 F.2d 1075, 1080 (9th Cir. 1978)); *see also* E.D. Cal. L. R.
26  202(b) ("No claim by or against a minor or incompetent person may be settled or compromised
27  absent an order by the Court approving the settlement or compromise.").

The Ninth Circuit instructs district courts to "limit the scope of their review to the question of whether the net amount distributed to each minor plaintiff in the settlement is fair and reasonable, in light of the facts of the case, the minor's specific claim, and recovery in similar cases." *Robidoux*, 638 F.3d at 1181–82. This requires the court to "evaluate the fairness of each minor plaintiff's net recovery without regard to the proportion of the total settlement value designated for adult co-plaintiffs or plaintiffs' counsel—whose interests the district court has no special duty to safeguard." *Id.* at 1182.

**III.   ANALYSIS**

Under the settlement agreement, Stanislaus County will issue a check for $579,200.00 to Powell & Associates Client Trust Account. Mot. at 7. This accounts for the entire settlement amount minus $20,800.00, which Stanislaus County will make payable to Structure Assignments SCC to fund future periodic payments to A.W. on her 18th and 25th birthdays. *Id.* Specifically, A.W. will receive a guaranteed lump sum of $10,016.06 in 2037 and a guaranteed lump sum of $43,704.49 in 2044. *Id.* The payment to Structure Assignments SCC shall be made through a qualified assignment under Section 130 of the Internal Revenue Code. *Id.* at 7–8. The Structure Assignments SCC shall make payments through the purchase of an annuity from Independent Life Insurance Company, which will make the future periodic payments. *Id.* at 8.

A.W.'s mother, plaintiff Taylor Webb, will receive $239,200.00, which is the total amount after applying a 50 percent contingency fee to $600,000.00 and subtracting $40,000.00 for costs. Robert R. Powell Decl. ¶ 6, ECF No. 144-1. Plaintiff Jeremy Westfall wishes to recover nothing from this action. *Id.* Westfall, unlike Webb, also is a plaintiff in a similar lawsuit regarding the removal of his son whereby he will receive $239,200.00 in settlement proceeds. *Id.*; *see also* First Am. Compl., *Westfall v. County of Stanislaus*, No. 21-00283 (E.D. Cal. May 17, 2021), ECF No. 7. Plaintiffs' counsel declares the contingency fee request and the ultimate distribution of the gross settlement award are fair and reasonable. Powell Decl. ¶ 4.

To show the requested recovery amount for A.W. is reasonable, plaintiffs' counsel provides a series of case citations involving unlawful removal, as well as cases involving wrongful death and sex abuse. *See* Mot. at 8–9. As noted in *Minors P.H. v. County of Riverside*,

3

removal cases appear less frequently than other minors' compromise cases. No. 15-00890, 2020 WL 10893001, at *3 (C.D. Cal. Mar. 30, 2020). Based on the court's independent review of these cases, as well as others, the court approves the total $20,800.00 award for A.W. *See, e.g.*, *Carefoot v. County of Kern*, No. 17-00456, 2019 WL 3026989, at *3 (E.D. Cal. July 11, 2019), *report and recommendation adopted*, No. 17-00456, 2019 WL 3943970 (E.D. Cal. Aug. 21, 2019) (approving $11,500 award for a minor who was removed for nearly two months at three months old); *McNelis v. County of El Dorado*, No. 22-00369, 2023 WL 5758540, at *5 (E.D. Cal. Sept. 6, 2023) (collecting cases and noting in unlawful removal cases, recovery ranges "from $7,000 to $28,000 with an outlier of $130,000"). Here, A.W. was four days old when she was removed from her mother for one day. Mot. at 9. There are no allegations A.W. was subjected to medical examinations or other invasive investigative procedures and there is no indication A.W. suffered or needs treatment for physical or emotional injuries. Mot. at 12. Given these factual circumstances, A.W.'s specific claim and recovery in similar cases, the court determines the net amount distributed to A.W. is fair and reasonable. *See Robidoux*, 638 F.3d at 1182.

Despite counsel's arguments, the court is concerned by the request for a 50 percent contingency fee. Mot. at 13–14; *McNelis v. County of El Dorado*, No. 22-00369, 2023 WL 5758540, at *4 (E.D. Cal. Sept. 6, 2023) (articulating similar concern with a request for a 40 percent contingency fee by the same attorney). Absent a showing of good cause, courts in the Eastern District of California generally consider 25 percent of the recovery as the benchmark for attorney's fees in contingency cases for minors. *See L.T. v. United States*, No. 22-00142, 2023 WL 5434423, at *3 (E.D. Cal. Aug. 23, 2023); *Mitchell v. Riverstone Residential Grp.*, No. 11-2202, 2013 WL 1680641, at *2 (E.D. Cal. Apr. 17, 2013) (collecting cases). Plaintiffs' counsel states he typically applies a contingency fee of at least 35 percent and contingency fees of 50 percent are not uncommon in these types of cases. Powell Decl. ¶ 14. However, plaintiffs' counsel does not explain why he applied 50 percent in this case instead of his normal 35 percent fee. Further, while the court acknowledges counsel's experience, *id.* ¶ 16, and the hundreds of hours counsel and his staff spent litigating this matter, given the overlap between this case and *Westfall*, counsel's proposed combined fee award of $600,000 between the two cases could be

4

considered excessive. *Compare* Mot. (seeking 50% contingency fee totaling $300,000.00) *with* Mot., *Westfall*, No. 21-00283 (E.D. Cal. Dec. 18, 2023), ECF No. 73 (seeking 50% contingency fee totaling $300,000.00).

Yet, in cases involving the settlement of a minor's federal claims, such as the instant action, the Ninth Circuit directs courts to focus their inquiry on "whether the net recovery of each minor plaintiff is fair and reasonable, without regard to the amount received by adult co-plaintiffs and what they have agreed to pay plaintiffs' counsel." *Robidoux*, 638 F.3d at 1179 n.2, 1182 (finding an abuse of discretion where the district court rejected a minor's settlement because it found a 56% contingency fee was excessive and unreasonable). Given this controlling precedent, because the court finds A.W.'s net award is fair and reasonable, the court grants the motion for approval of minor's compromise for A.W.

## IV. CONCLUSION

For the reasons set forth above:

1) The settlement of the minor plaintiff's claims, as compromised given the terms of the settlement reached among the parties, and as further described in the Ex-Parte Petition for Approval of Minor's Compromise filed December 7, 2023, is approved;

2) The settlement amount of $20,800.00 shall be made payable to Structured Assignments, SCC, to fund the future periodic payments to A.W. on the dates and in the amounts indicated below:
   a. $10,016.06 guaranteed lump sum, payable on A.W.'s 18th birthday.
   b. $43,704.49 guaranteed lump sum, payable on A.W.'s 25th birthday.

3) The parties' projected purchase date of the annuity policy was January 10, 2024. The delay in funding the annuity may result in a delay of the payment dates by an equal number of days, or a change in the payment amounts that shall be accurately recorded in the qualified assignment and release document and annuity contract without the need of obtaining an amended Petition or Court Order. A comparably rated life insurance company may be substituted to obtain the best interest rates available at the time of funding;

5

4) Defendant Stanislaus County and/or Insurer shall make a qualified assignment under Section 130 of the Internal Revenue Code to Structured Assignments SCC, to fund the obligation to make payments through the purchase of an Annuity from Independent Life Insurance Company, who shall make the future periodic payments;

5) The court approves the distribution of attorneys' fees to plaintiffs' counsel as set forth in the Ex-Parte Petition for Approval of Minor's Compromise;

6) The Clerk of Court is directed to file, under seal, an unredacted version of plaintiffs' corrected proposed order regarding plaintiffs' motion for ex parte approval of minor's compromise.  Only the parties to this case and their respective counsel shall be permitted access to the sealed document.

This order resolves ECF No. 144.

IT IS SO ORDERED.

DATED: June 3, 2024.

_____
CHIEF UNITED STATES DISTRICT JUDGE